What's undisputed in this case is that the trial court never gave the defendant or counsel a warning before he removed him from the trial and held the entire trial in his absence. And under Allen v. Illinois, the Supreme Court clearly established in holding, wherein the Supreme Court How clear can it be, counsel, if the Second and Sixth Circuits have divided over the question? It can be clear if you look at the actual language in Allen v. Illinois, where the Supreme Court literally says, We explicitly hold that a defendant can lose his right to be present at trial if, after he has been warned by the judge. That would be true. And that would also be quite clear. If somebody has been warned, they may be excluded from the trial. The interesting question raised by this case is whether you can also be excluded from a trial with something less than an explicit Miranda-type warning of what's going to happen if you continue to misbehave. Yes, Your Honor. And in Taylor, that is what happens in Taylor, where there's a voluntary, when the defendant voluntarily absenced himself from the trial, you don't have to have a warning. And what's really critical in the distinction, I think, between Allen and Taylor is the constructive knowledge, whether they had knowledge. And what I think is really unique and important in this case are two factors that definitively show what the defendant's knowledge was in this case. One, we actually have a finding from the trial court that he's malingering and that his misbehavior is deliberate for the purpose of stopping the trial. He never believes, never has knowledge that he's going to be tried in absence if his misbehavior continues. In fact, the opposite is true. And the trial court explicitly finds that. You keep misbehaving, you know, I'm sorry, the trial court explicitly finds that the defendant believed that his misbehavior was intended to stop the trial. How long did this trial go? It's like afternoon. So it was just part of a day? It's a day. Okay. And at what point did the judge go and see him in the cell? After all the evidence is heard to question him about his right to testify and whether he wants to come in and testify. So it was at the end of the prosecution's case before? Because he seems concerned about whether to know whether or not Henry wishes to testify. That's right. So is this at the start of the defense's case? Yes, Your Honor. So he could have been given the warning at that time, but I really think even more appropriately it could and should have happened at the minute. Three bailiffs are taking him out. The jury is recessed at that moment. That really is the perfect time to give him the warning. You've got three bailiffs. The jury is gone. The trial hasn't started because the disruption happens at the time of opening argument. The jury is already recessed. That is the moment to stop and give him a warning. There was absolutely no reason not to do that at that time. And the second point I just wanted to make about his mental state, besides the factual finding made by the trial court, is that during jury selection when he is also acting out a bit and you've got two jurors that are saying, you know, conceding. We have bias because he is so disruptive. We don't think we can be fair jurors. And what the judge says is, too bad, invited error. And what that means is, listen, you're going to be present during your trial. And if you act out, the jurors are going to disbelieve you or have prejudice against you. So he's actually told, you're going to have a trial. And if you act out, the jurors are going to, you know, it's going to disfavor you in terms of the juror's judgment. That's a lot of meaning to attach to the phrase invited error. That might have been what's in his head. But to treat that as a, listen, what you just kind of spun out, that might have been what's in the judge's head. But I have trouble thinking that that was communicated to the defendant at that time. Well, I think it's implicit. There's certainly no, insofar as Taylor is requiring that you have knowledge and an understanding that your disruptive behavior is going to result in being tried in absentia, you've got these two facts that suggest the opposite. You have an actual finding where they're saying the misbehavior is to stop the trial. And then you have an implicit thing going on with the jurors where it's like the jurors are going to watch you. You're going to be present. The jurors can't make that judgment if you're present, if you're not present in trial. I have to say I'm sympathetic with your case here. On the other hand, we're dealing with AEDPA and we're dealing with Allen that describes the warning but does not say that the warning was essential. That's how the Second Circuit read Allen. And I'm afraid that we're in trouble, if we're going to hold for you, given the judge on the Second Circuit. It was Judge Sotomayor. And if she reads Allen that way, heaven help us when this goes to the Supreme Court under AEDPA. Under Richter's, under no fair-minded disagreement as to what's clearly established? Yeah. And what do you make of Justice Brennan's concurrence? Because it seems to me it was there that he indicates no action, no action against an unruly defendant is permissible except after being fully and fairly informed. And that, to me, what was the purpose in the concurrence? If it was so clear in the opinion, what was the purpose of Justice Brennan's concurrence there? Well, I think Taylor answers that question. That is to say there are going to be circumstances where it's either it's clear from the record that the defendant has the knowledge, so a warning really is not needed because there is requisite knowledge. And maybe there's not the opportunity, like in Taylor, the defendant just walks off, so there is no opportunity to give the defendant a warning. So I think the distinction there with respect to the concurrence is that there are going to be some circumstances where a warning isn't necessary. It can't be every case. Let's suppose that the judge gives the warning as the three bailiffs are struggling with Mr. Henry and take him out. Now, at that point, Henry is not in any position to be, you know, thinking rationally about his presence at trial. He clearly is acting up. He is being escorted out forcibly. Not a good time for anybody to be reflective about their constitutional rights. But let's suppose the judge does give him the warning. At what point would there have been here in a very, very short trial that only lasts a couple of hours for Henry to have said, okay, I'm ready to come back now? And what was there that Henry didn't understand when the judge comes and sees him in the holding cell and he's stripped off all of his clothes and the judge says he's sticking his tongue out at him when he tries to talk to him? I think there's a lot there. First of all, why doesn't that make that more like Taylor and more sort of voluntary? That is, I take off all my clothes, I stick my tongue out at the judge, I'm in the holding cell. You sort of de facto said, I don't want to be here. I have three answers to that. One, even in Taylor there was a recess. Okay? You have a voluntary, he recesses for a day to see what's going on and make an assessment. Two, the fact that he takes his, two, there is this incompetence issue. And I understand not wanting to go there. But undeniably there is an incompetence issue there. And three, just because, again, he thinks his misbehavior is stopping the trial. So if there is no warning, just because he's in the cell saying, go away, I'm going to stab you, or I'm taking my clothes off and I'm having a break with reality, there's nothing there that suggests that he has the knowledge that he's going to be tried in his absence if he continues this misbehavior because no warning is ever given. So the fact that he's saying, go away, go away, he still thinks he's going to stop the trial. Okay. Well, you're down to just about a minute. Why don't we hear from the other side and then you'll have that time saved. Thank you so much, Your Honors. Good morning. Deputy Attorney General Blythe Leskay for Respondent. May it please the Court. There's no dispute here that petitioner's behavior warranted removal. A trial court when faced with a violent and disruptive misbehavior. Before you even go beyond that, you're saying there's no doubt that they need to be removed, and yet where in the record does it indicate that he considered any other less drastic measure in this day and age? Perhaps you can send an audio signal at least, if not a video, to some other place where he's restrained. Does the record show that the judge considered any other measure besides a total exclusion from the trial? I think at the point that petitioner's outburst, his violence towards the deputies, his wrestling with them as they were trying to restrain him and ultimately removed him from the courtroom, there was really no point for him to even consider anything at that point. And then the question becomes under a DEPA, was the trial court required to consider something else? And there's certainly no clearly established law that says that the trial court is required to consider certain things. In fact, in Allen, what the court said is that a trial court has to have discretion in order to deal with the circumstances of any particular case before it, and that there's no one formula that addresses the particular circumstances. And the court in Allen went through at least three different types of things that a trial court could do, such as restraining and gagging the defendant and having him sit before the court, which the Allen court found would be kind of an extreme situation. It could not be an unreasonable application. In other words, that's another way for him to prevail here, is if it's an unreasonable application of clearly established federal law. Right, and I think the thing that I'm trying to distinguish is the fact that we're not here talking about whether the trial court was justified in removing the defendant. The only issue is whether he should have warned the defendant prior to the removal. And really, Allen never required such a warning. Allen never stated that a defendant must be warned prior to removal. The facts of the case of Allen, the trial court did, in fact, warn the defendant there. And what the court was being asked to determine was whether that was constitutional, whether with a warning and then removal that the defendant could be removed. And the court found, yes, under those circumstances, that's permissible, and that's under the Constitution. But what the court did not stop short of saying is that a warning is required in every situation. And I think when you look at the broad spectrum of misbehavior that can prompt this sort of thing, there's really a, you have from a very minor kinds of disruptive behavior that a defendant can engage in to very extreme behavior. And this case falls on kind of the more extreme end where you have somebody who is shouting and ranting and really didn't give the court even an opportunity to warn him, even if it wanted to, and violently struggling with the bailiffs. And then even after he's removed, the court says he's still down the hall screaming. You know, the court is very aware that Petitioner here's behavior was violently disruptive. And here we also have a petitioner who had stated explicitly to the court that he did not want to be present. He had said that before trial. He didn't want to be present with his attorney. Well, that's the point, isn't it? It was conditional. He did not want to be present in the trial, he said, if represented by the attorney that was assigned to him. Right. And the trial court did not remove that attorney. So that condition existed where Petitioner did not want to be present. And then his violent behavior, as soon as the trial started, basically he was enacting and he was forcing the court to remove him and to give him exactly what he wanted, which was not to be present. Well, even if we assume that warning is not required, it's not mandatory, nonetheless, doesn't there have to be, if we're going to talk about forfeiture, and this is a forfeiture case, really, is it not? Yes, that's our position. So if there's going to be a forfeiture, doesn't that have to, like a waiver, be knowing? It does not, especially when you're considering a case where you're talking about it's the defendant's misconduct that's causing the forfeiture. And it's the defendant who is now trying to profit from his own misconduct. He's trying to benefit from his own misconduct. He wanted to delay the trial, according to the trial court. That was his purpose. His motive was not to exclude himself from the trial, but to, apparently, the trial court felt he was trying to delay the trial. The trial court actually made both findings. The trial court found that Petitioner was acting to delay the trial and also did not want to be present. And, in fact, when the trial court was discussing Petitioner's behavior in removing his clothes and threatening to stab anyone who got him out of a cell, which would be, obviously, the only way to bring him back to court, the court found that that was an intentional act because he did not want to come back to court and that that was his intent. So the trial court did make that explicit finding. Let me ask you this. I found it curious that the trial court went to the jail. By the way, when he went to the jail, was Henry clothed or not at that point? I don't think that's clear from the record. But when he did, he went there to ensure that Henry's Fifth Amendment rights were protected and seen. So, implicitly, he was prepared to bring him to the courtroom to testify, was he not, in order to ensure the Fifth Amendment rights had been fulfilled? Yes, and I think that the trial court here, before trial, during jury selection, and also at that point, showed his concern for the defendant's rights in this case. He showed his concern by warning the defendant, look, if you're acting up, you see these jurors are becoming biased against you. If you continue doing this, it's invited error on your part. You're the one that's causing them to look at you this way. The court was concerned about the defendant maintaining his right to testify. And even at the lunch recess, even though when the court initially ejected the defendant, it said he was going to remove him for the entire day. But then the court reconsidered at the lunch recess. He would have brought him back, except that petitioner at that point, the court learned that he had threatened to stab anyone who would take him out of his cell and removed all his clothes. So there was really no way for the court to, at that point, bring him back. But the court was at all times concerned about protecting the petitioner's rights in this case, and it showed that throughout. And that's one example, I think, of that. This is not a case where the court was, you know, just threw him out and didn't consider anything else. If the panel found that it was error, your position is that it would be harmless error. But it's a little bit difficult to see how it could be harmless where Henry was precluded from participating in any of the evidentiary portion of the trial. And don't we understand precedent to be that you look at what evidence was presented during a defendant's exclusion from trial to determine whether it's harmless or not? I think that is one factor, what parts of the trial was he excluded from. That's certainly one factor to consider. And here we have evidence that was simply overwhelming, that petitioner, there's no indication that his presence would have made a difference, certainly. And more importantly, because we're talking here about the failure to warn, there's no indication that if he had been warned that he would have heeded that warning, that he would have insisted that he be able to be present. In fact, his behavior and his statements showed the opposite, that he did not want to be present. And we also have here a trial court instructing the jury not to infer anything from his absence. And in particular in this case, it's likely the petitioner's presence would have actually harmed his case. And we know that from the jury selection, what happened during that time when petitioner's behavior was already biasing the jury against him before they had even heard a single piece of evidence. His absence actually allowed the jury to focus on the evidence before it and frankly to give him a fair trial. In sum, the California Court of Appeal reasonably found that petitioner's right to be present was not violated when he was removed from the courtroom without an express warning. And after he disrupted the trial and indicated that he did not want to be present, neither Allen nor any other United States Supreme Court compelled the California courts to hold otherwise. And the district court's decision should be upheld. Thank you. Okay, thank you. You've saved about a minute. Thank you, Your Honors. Quickly, it's hard to say this quickly, but under Richter's- You get to say what you need to say. We're not going to cut you off. Okay, thank you. Richter's standard is rough, no fair-minded disagreement. But it can't mean that we require unanimity to make a decision. Why do we have courts? Why are we here? I think we look at Allen, and Allen's language is clear. It's not ambiguous. We explicitly hold this. Well, but Allen's language is clear that in the circumstance where a warning has been given, that it's constitutionally permissible. But that language was read by Judge Sotomayor in the Second Circuit as going only so far as the facts of that case and not saying that a warning was required in all circumstances. It isn't required in all circumstances. This case is very hard to distinguish from Allen. The facts are almost identical. And I guess where we would disagree is that Allen is not simply limited to his facts where you have a judge that actually administers a warning. I think the holding is actually expressly clear that a warning is required in these circumstances, and we meet the test of these circumstances. This is not a voluntary absenting. Thank you, Your Honors. I submit. Thank you very much. Thank both sides for their helpful arguments.
judges: Settle, Fletcher, Bybee